UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

THE PAVERS AND ROAD BUILDERS DISTRICT
COUNCIL WELFARE FUND, et al.,

                    Plaintiffs,          <u>MEMORANDUM AND ORDER</u>

          -against-                      14-CV-04186 (MDG)

J. PIZZIRUSSO LANDSCAPING CORP., D.
GANGI CONTRACTING CORP., and D. GANGI
CONTRACTING/J. PIZZIRUSSO LANDSCAPING
JV,

                    Defendants.

- - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

     The plaintiffs, consisting of various employee fringe benefit

funds (named in the Complaint as the Pavers and Road Builders

District Council Welfare Fund, the Pension Fund, the Annuity Fund,

the Apprenticeship, Skill Improvement and Safety Fund, the Local

1010 Apprenticeship, Skill Improvement and Training Fund (the

"Funds");[1] Joseph Montelle and Keith Loscalzo, in their fiduciary

capacities as Funds Administrators; and the Highway, Road and

_____

[1]  In a Collective Bargaining Agreement (the "CBA") pertinent to
the issues raised in this action, as further described below, the
Funds are more specifically identified as the "Pavers and Road
Builders District Council Pension Fund," the "Pavers and Road
Builders District Council Annuity Fund" and the "Pavers District
Council Apprenticeship, Skill Improvement and Safety Fund."
respectively.  Art. X, Sec. 1(a), CBA (DE 32-1) at 23.  The CBA
also indicates that as of July 1, 2010, the "Local 1010
Apprenticeship, Skill Improvement and Training Fund [] is
substituted for the Pavers District Council Apprenticeship, Skill
Improvement and Safety Fund in all respects."  <u>Id.</u>

Street Construction Laborers Local Union 1010 (the "Union")
(collectively called the "Plaintiffs") bring this action pursuant
Sections 502(a)(3) and 515 of the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3),[2] 1145 and
section 301 of the Labor Management Relations Act, 29 U.S.C. § 185
against defendants J. Pizzirusso Landscaping Corp. ("Pizzirusso"),
D. Gangi Contracting Corp. ("Gangi") and D. Gangi Contracting/J.
Pizzirusso Landscaping JV (the "JV").  Plaintiffs assert various
claims for relief seeking to recover unpaid benefit contributions
and unpaid dues checkoffs and contributions allegedly owed under a
collective bargaining agreement.

Defendants Pizzirusso and the JV have moved for judgment on
the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure, a motion in which defendant Gangi joins.  <u>See</u> DE 31 at 5
(Mem. of Law in Support of Motion).

## <u>BACKGROUND</u>

Except as otherwise noted, the following are facts taken from
the factual allegations in plaintiffs' Complaint ("Compl.") (DE 1),

---

[2] The claims to enforce the terms of the CBA pursuant to ERISA
are presumably brought only by the Funds and individual fund
administrators.  However, the Second Circuit takes a narrow view of
the jurisdiction of district courts over ERISA claims brought under
Section 1132 and has held that because employee benefit plans are
not among the enumerated plaintiffs authorized to bring suit under
Section 1132(a), benefit plans are not proper plaintiffs under the
exclusive jurisdictional grant under Section 1132(e), although the
their administrators or trustees are.  <u>Dist. Council 1707 Local 389
Home Care Empt.' Pension & Health & Welfare Funds v. Staghorn</u>, No.
11 C.V. 7911 (PAC), 2013 WL 1223362, at *5–6 (S.D.N.Y. Mar. 25,
2013) (citing <u>Pressroom Unions–Printers League Income Sec. Fund v.
Continental Assur. Co.</u>, 700 F.2d 889, 891–93 (2d Cir. 1983)).

which are accepted as true for purposes of this motion. See
Ashcroft v. Iqbal, 556 U.S. 662. 678 (2009).

**Pertinent Facts**

The Funds are multi-employer labor-management trust funds
established and maintained pursuant to various collective
bargaining agreements. Compl. at ¶ 6. In July 2012, the Union
entered into the CBA with the General Contractors Association of
New York, Inc. ("GCA") and employers who appointed the GCA as their
agent to negotiate the CBA, which covered the period from July 1,
2012 to June 30, 2015). Id. at ¶ 14; see also DE 32-1 (the CBA,
which is entitled "Agreement Between Members of the General
Contractors Association and the Highway, Road and Street
Construction Laborers Local Union 1010 of the District Council of
Pavers and Road Builders of the Laborers' International Union of
North America, AFL-CIO") at 1.[3] Under the CBA, employers
performing covered work within the jurisdiction of the CBA are
required to make fringe benefit contributions to the Funds on
behalf of employees performing certain specified work. Compl. at
¶¶ 16-17; CBA at Art. II, Sec. 2. In addition, employers are
required to deduct union dues from the wages of covered employees
and remit those dues to the Union. Compl. at ¶ 19. Employers are
also required to submit their books and records for audit to

---

[3] The CBA, which plaintiffs attached as an Exhibit to their
opposing memorandum (DE 31-1), may be considered by the Court since
plaintiffs expressly incorporated it by reference in the Compl.
See Compl. at ¶ 14; New York Life Ins. Co. v. United States, 724
F.3d 256, 258 n. 1 (2d Cir. 2013) (citation omitted).

determine whether proper contributions have been remitted.  <u>Id.</u> at ¶ 20.

Defendant Gangi is a member of the GCA and has agreed to the terms of the CBA.  Compl. at ¶ 13, 15; DE 20 (Gangi's Answer) at ¶ 13; <u>see also</u> CBA, Art. II, Sec. 2.  Gangi is an employer with offices at 2642 Coyle Street, Brooklyn, NY.  Compl. at ¶ 10.  The defendant JV is an unincorporated partnership between Gangi and Pizzirusso.  <u>Id.</u> at ¶ 12.  Pizzirusso and the JV have offices in Brooklyn at 2158 East 72nd Street and 2300 East 69th Street, respectively.  <u>Id.</u>  at ¶¶ 11, 12; <u>but see</u> DE 15 at ¶ 11 (Pizzirusso Answer stating it has offices at 7104 Avenue W, Brooklyn).

The CBA "covers work performed by the Employer in New York City on Heavy Construction, Site and Grounds Improvement, Utility, Paving and Road Building Work," including "Utility, Paving, Highway, Road and Street Construction Work [] on ... parks, plazas, malls, housing projects, playgrounds ..."  CBA, Art. II, Sec. 2 and Art. VII, Sec. 1.  Both Gangi and the JV perform paving work and road building work in New York City, which plaintiffs contend is work within the jurisdiction of the CBA.  Compl. at ¶ 33.  In performing this work, both entities "use[] the same kind of equipment and the same heavy and highway construction laborers."  <u>Id.</u>  Plaintiffs allege on information and belief[4] that Gangi has

_____

[4]  Although this and certain other allegations are made "upon information and belief," a court is not precluded from considering such allegations and may even find them "sufficient to show an entitlement to relief."  <u>Tr. of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors, Inc.</u>, No. 13 CV 1739,

(continued...)

possession, custody, control and/or a right to access the books and records of the JV.  Id. at ¶ 43.

In August 2012, the JV began performing a paths and driveway reconstruction project in Forest Park, Queens for the New York City Parks Department (the "Forest Park Project").  Id. at ¶ 26; see also DE 15 at ¶ 26 (Pizzirusso and JV Answer, admitting that "it performed certain construction work" at Forest Park).  The JV is also engaged in reconstructing the landscaped malls along Ocean Parkway in Brooklyn and the nearby Colonel David Marcus Playground for the New York City Parks Department (the "Ocean Parkway Project").  Id. at ¶ 27; see also DE 15 at ¶ 27 (admitting that the JV was contracted to perform work at Ocean Parkway and the Playground).

Claims Asserted

Although the JV is not a signatory to the CBA, plaintiffs contend that the JV is obligated to comply with the CBA for work performed on the two projects, because Gangi's interest in the JV triggers application of Article IX, Section 1(d) of the CBA:

> The Employer stipulates that any firm engaging in Paving and Road Building Work in which it has or acquires a financial interest, shall be bound by all of the terms and conditions of this Agreement.  The Employer agrees that if it forms or acquires an interest (other than

4/(...continued)
2013 WL 5637492, at *6 (E.D.N.Y. Oct. 15, 2013) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010);  see also Trs. of Laborers Union Loc. No. 1298 of Nassau & Suffolk Ctys. Ben. Funds v. A to E, Inc., 64 F. Supp. 3d 435, 440–41 (E.D.N.Y. 2014) (the fact that some of the allegations are made upon information and belief" does not render them implausible).

financial interest) in an entity that performs work that is covered by this Agreement, the Employer will give notice to the Union of the formation or acquisition of the entity and that the entity will be covered under this Agreement.

CBA, Art. IX, § 1(d); Compl. at ¶¶ 24-25, 29-30.

Contending that defendants are liable as employers under the CBA for work performed by the JV on the Forest Park and Ocean Parkway Projects because of Art. IX, § 1(d) of the CBA, Plaintiffs assert the following claims in their Complaint: Claims 1-5 against Gangi, the JV or both for failing to comply to permit or to cooperate with an audit and to make requisite payments; Claims 6 to 9 against the JV for failing to pay fringe benefit or trust contributions and union dues; Claim 11 against the JV for failing to post a bond required by the CBA; Claim 14 against both Gangi and Pizzirusso, as members of the JV, for the JV's unpaid obligations under the CBA; and Claim 16 against only Gangi.

As alternative theories for relief to bind the JV as a non-signatory to the CBA, plaintiffs assert as their Fifteenth Claim for Relief that the JV is an alter ego or successor of Gangi, or that the JV is a single employer with Gangi. Id. at ¶¶ 31, 32.

Plaintiffs also plead as three separate claims the following requests for relief, which are also repeated in their prayer for relief: Claim 10 for payment of damages for interest, statutory damages, court costs and attorneys' fees; Claims 12 and 13 for injunctive relief. Compare Compl. ¶¶ 83-86, 92-97, 99-103 with Compl. at 22-23 (Prayer for Relief ¶¶ g - k). This Court views these "claims" as "demands for judgment" under Rule 8(a)(3) of

Federal Rules of Civil Procedure, rather than as claims for relief under Rule 8(a)(2).  See Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1255 (3d ed.) ("The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for" determining motions challenging the sufficiency of claims alleged in a complaint).  Cf. Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 742-43 (1976) (a complaint asserting only one legal right, even if seeking multiple remedies for an alleged violation of that right, states a single claim for relief).


## DISCUSSION

### I.   Rule 12(c) Standard

The standard for determining a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.  See Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010); Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 128 (2d Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that "are no more than conclusions . . . are not entitled to the assumption of truth."  Iqbal 556 U.S. at 678-79.  As to factual allegations that are well-pled, the court must determine whether they "plausibly

give rise to an entitlement to relief." Id., 556 U.S. at 679.
After assessing the allegations as a whole, "courts may draw a
reasonable inference of liability when the facts alleged are
suggestive of, rather than merely consistent with, a finding of
misconduct." Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic
Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d
705, 717–21 (2d Cir. 2013) (quoting N.J. Carpenters Health Fund v.
Royal Bank of Scot. Grp., PLC, 709 F.3d 109, 121 (2d Cir. 2013)).

In resolving a motion under Rule 12(c), a court may consider
"'the complaint, the answer, any written documents attached to
them, and any matter of which the court can take judicial notice
for the factual background of the case.'" L-7 Designs, Inc. v. Old
Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (quoting Roberts v.
Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)).

II.  Anti-dual Shop Clause

Defendants argue that the breach of contract claims based on
Art. IX, § 1(d) of the CBA must be dismissed because that clause is
facially invalid and is unenforceable under the "hot cargo"
prohibition of section 8(e) of the National Labor Relations Act
("NLRA").  Section 8(e) provides:

> It shall be an unfair labor practice for any labor
> organization and any employer to enter into any contract
> or agreement, express or implied, whereby such employer
> ceases or refrains or agrees to cease or refrain from
> handling, using selling, transporting or otherwise
> dealing in any of the products of any other employer, or
> to cease doing business with any other person, and any
> contract or agreement entered into heretofore or
> hereafter containing such an agreement shall be to such
> extent unenforceable and void . . . .

29 U.S.C. § 158(e).

This provision, which was enacted as part of the Landrum-Griffin Act of 1959, "outlaws 'hot cargo' clauses, or agreements prohibiting an employer from doing business with any firm not affiliated with the contracting union." Conn. Ironworkers Emp'rs Assoc., Inc. v. New Eng. Reg'l Council of Carpenters, 869 F.3d 92, 102 (2d Cir. 2017). The Supreme Court in Connell Const. Co. v. Plumbers & Steamfitters Loc. Union No. 100, 421 U.S. 616 (1975), noted, after examination of the legislative history of the provision, that § 8(e) is intended to invalidate only those contract clauses with secondary objectives, while those with a primary purpose, such as work preservation, remained lawful. See id. at 629-31, 637-45; see also Sheet Metal Div. of Capitol Dist. Sheet Metal, Roofing & Air Conditioning Contractors Ass'n, Inc. v. Loc, 38 of Sheet Metal Workers Int'l Ass'n, 208 F.3d 18, 23 (2d Cir. 2000) (the section prohibits agreements that have the objective of affecting the business of secondary or non-contracting employers).

Agreements "are lawful under § 8(e) [if they] are '(1) aimed at preserving work that union-represented employees in the bargaining unit traditionally perform, and (2) directed at work over which the contracting employer has control.'" Sheet Metal, 208 F.3d at 22-23 (quoting Bermuda Container Line Ltd. v. Int'l Longshoremen's Ass'n, 192 F.3d 250, 256 (2d Cir. 1999)); see also NLRB v. Int'l Longshoremen's Ass'n, 447 U.S. 490, 504 (1980). The rationale for the second prong is that if the contracting employer

does not have the power to assign the work, it is reasonable to infer that the agreement has the secondary objective to influence the person or entity that has such power. Int'l Longshoremen's Ass'n, 447 U.S. at 504-05. A properly drafted "anti-dual shop" clause is designed to "prevent the signatory employer from diverting unit work to an entity not formally bound by the collective-bargaining agreement while continuing to control and profit from the performance of the work." Rd. Sprinkler Fitters, United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the U.S. & Canada, AFL CIO, 357 N.L.R.B. 2140, 2141 (2011). Such an anti-dual shop clause serves the purpose of prohibiting a unionized employer from affiliating with a nonunion company in a "double-breasting arrangement" in which a unionized employer forms, acquires, or maintains a separately managed nonunion company that performs work of the same type as that performed by the affiliated union company. Id.; Carpenters Dist. Council of Northeast Ohio (Alessio Constr.), 310 N.L.R.B. 1023 (1993).

The determination of whether an agreement is a lawful work preservation agreement or has an impermissible secondary objective requires examination of:

> [W]hether, under all the surrounding circumstances, the Union's objective was preservation of work for the primary employer's employees, or whether the agreements and boycott were tactically calculated to satisfy union objectives elsewhere. . . . The touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer vis-a-vis his own employees.

Sheet Metal, 208 F.3d at 23 (quoting National Woodwork Mfrs. Assn., 386 U.S. 612, 644—45 (1967)).  Where the meaning of a disputed contract clause is plain, the Court may determine its validity under § 8(e) without resorting to extrinsic evidence.  See R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89-22-1, I.L.G.W.U., AFL-CIO, 33 F.3d 145, 154 (2d Cir. 1994).

The wording of Art. IX, § 1(d) of the CBA plainly provides that any entity formed by a covered employer or in which a covered employer holds a financial or any other interest is bound by the terms of the CBA, if the entity performs the covered work specified by the CBA.  Clearly, the clause operates to extend the CBA to the employees of a secondary employer, such as the JV, and ensure that employers comply with the terms of the agreement.  The clause is not confined to binding entities over which Gangi or any employer has the right of control.  All that is required for the CBA to apply to a secondary employer is for Gangi or a covered employer have any interest, whether controlling or not, in the non-union employer.  This Court thus finds that the provision is facially invalid and violates § 8(e).

The National Labor Relations Board (the "Board") has found that contract provisions similar to Art. IX, § 1(d) of the CBA violated § 8(e).  In Alessio Constr., the Board construed a provision requiring that if the "partners, stock holders or beneficial owners" of the contracting employer "form or participate in the formation of another company," that company would be covered

by the collective bargaining agreement.  310 N.L.R.B. at 1025-26.
In finding that anti-dual shop clause unlawful, the Board held that
the contract clause was calculated to cause Alessio to sever its
relationship with affiliated firms that sought to remain nonunion
and to affect labor relations between the nonunion affiliated
companies and their employees over which Alessio did not control.
See id. at 1026.  Similarly, the Third Circuit in NLRB v. Cent. PA
Reg. Council of Carpenters, 352 F.3d 831 (3d Cir. 2003) affirmed
the ruling of the Board that the proviso did not save a broad anti-
dual shop clause in a collective bargaining agreement, which was
"not limited to the 'contracting or subcontracting of work to be
done at the site of construction,' but, instead, purports to cover
all construction work done by subsidiaries and joint ventures of
the company").  Id. at 836 (quoting Alessio).

     In Local 520, Int'l Union of Operating Eng'rs, AFL-CIO
(Massman Constr. Co.), the relevant contract provision stated that
the contracting employer must require as a condition for entering
into any joint venture or joint work undertaking that all parties
agree to be bound by the agreement.  327 N.L.R.B. 1257 n.2 (1999).
There, the Board found that the joint venture provision violated
§ 8(e) since it would affect the signatory employer's business
relationships under circumstances in which the signatory employer
had no power to control the work of the joint venture.  See id. at
1258, 1263.

     In the Blasters, Drillrunners and Miners Union, Local 29 of
the Laborers Int'l Union of N. Am. AFL-CIO (RWKS Comstock), the

Board ordered the Union to cease and desist from enforcing a provision of its collective bargaining agreement that provided that the contracting employer agreed that any entity "in which it has or acquires a financial interest" or "any venture with other contractors or operators" in which it participates must comply with the terms of the collective bargaining agreement. 344 N.L.R.B. 751 (2005). The administrative law judge found that the clause was illegal "because it does not limit the provision to those situations where there is both common ownership and control or where there is a diversion of struck work." Id. at 754.

Moreover, Art. IX, § 1(d) of the CBA is not limited to joint ventures.[5] Even if it the clause were limited to joint ventures, such a clause would also be invalid because it would apply even where the signatory employer does not control the work of the joint venture, as discussed. See Massman, 327 N.L.R.B. at 1258, 1263. Cf. Rd. Sprinkler, 357 N.L.R.B. at 2142 (finding that a provision that bound non-signatories that "are established or maintained by a signatory employer . . . indicates that the signatory employer exercises control over covered operations"). Although plaintiffs are correct that the contract does not expressly require Gangi to cease doing business with any entity, the purpose of such contract clauses is to force a signatory to sever its affiliate relationship with a non-signatory that does not want to abide by the terms of a

---

[5] The case cited by plaintiffs for the proposition that a joint venture clause is a lawful accretion clause is not applicable since the court did not address § 8(e). See Mason Tenders Dist. Council Welfare Fund v. Kan Klean Indus., Inc., No. 92 Civ. 7688, 1996 WL 447751, 1996 U.S. Dist. LEXIS 11295 (S.D.N.Y. 1996).

-13-

collective bargaining agreement.  See Alessio, 310 N.L.R.B. at

1026.  Such a provision is "unenforceable and void."  See 29 U.S.C.

§ 158(e).

Plaintiffs argue that even if the contract provision violates

§ 8(e), the "construction industry proviso" exempts such agreements

made in the construction industry.  The construction industry

proviso states that "nothing in § 8(e) shall apply to an agreement

between a labor organization and an employer in the construction

industry relating to the contracting or subcontracting of work to

be done at the site of construction, alteration, painting, or

repair of a building, structure, or other work."  29 U.S.C.

§ 158(e).  While plaintiffs are correct that certain agreements

made in the construction industry are exempt from the prohibition

of "hot cargo" agreements in § 8(e), Conn. Ironworkers, 869 F.3d at

102, plaintiffs cite no authority to support their claim that the

proviso applies to the circumstances here.

The Supreme Court has recognized that Congress intended the

construction industry proviso "to preserve the status quo"

regarding agreements between unions and employers in the

construction industry.  See Woelke & Romero Framing, Inc. v. NLRB,

456 U.S. 645, 657 (1982).  "[T]he test for the permissibility of

any particular practice under the construction industry proviso is

whether or not the practice is consistent with 'Congress'

perceptions regarding the status quo in the construction industry

[in 1959].'"  Local 210, Laborers' Int'l Union of N. Am. v. Labor

Relations Div. Associated General Contractors of Am., 844 F.2d 69,

75 (2d Cir. 1988) (quoting Woelke, 456 U.S. at 657).  Those

practices that were not part of the status quo in the construction

industry in 1959 are not protected by the construction industry

proviso.  Id. at 76; see Woelke, 456 U.S. at 657.  Consistent with

"traditional notions" of statutory construction and Congress'

purpose, the National Labor Relations Board has cautioned against

an expansive reading of the proviso, but, instead, has limited

protection to only "those subjects expressly exempted by the

proviso."  Spectacor Mgmt. Grp. v. NLRB, 320 F.3d 385, 395–96 (3d

Cir. 2003) (citations omitted).

As the Supreme Court made clear in Connell Constr., "Congress

intended the construction industry proviso to apply only to

agreements 'in the context of collective-bargaining relationships

and ... possibly to common-situs relationships on particular

jobsites as well.'"  Conn. Ironworkers, 869 F.3d at 102–03.  Thus,

"Congress limited the construction-industry proviso to that single

situation, allowing subcontracting agreements only in relation to

work done on a jobsite."  Connell Constr., 421 U.S. at 630.  For

example, in Woelke, the Supreme Court found that Congress believed

that contract clauses in which an employer agreed not to

subcontract work on a construction site to a nonunion employer were

part of the pattern of collective bargaining at the time the

statute was enacted in 1959 and were therefore permissible under

the proviso.  Id. at 655–660.

In contrast, the contract provision at issue here is not a

subcontracting clause and binds a non-signatory employer that is

simply affiliated with a signatory employer through common ownership to the CBA. The Board has found that similar contract clauses are not protected by the construction industry proviso, confirming the finding of the Supreme Court in Connell Constr. that the proviso applies only in the subcontracting situation. The Board's interpretation of the proviso is entitled to considerable deference. See R.M. Perlman, 33 F.3d at 153; see also Elec. Contractors, Inc. v. NLRB, 245 F.3d 109, 116 (2d Cir. 2001) (quoting NLRB v. Loc. Union No. 103, Int'l Assoc. of Bridge, Structural & Ornamental Iron Workers, 434 U.S. 335, 350 (1978) that the Board's interpretation of NLRA is "entitled to considerable deference" when it "represents a defensible construction of the statute").

In Alessio, the Board found that "double breasting arrangements" were not an industry practice in 1959, and as a result, anti-dual shop clauses were not part of the pattern of collective bargaining in the construction industry at the time. See 310 N.L.R.B. at 1027. Construing the construction industry proviso narrowly and finding that Congress could not have intended to protect anti-dual shop clauses in the proviso, the Board held that the anti-dual shop clause was not protected by the proviso. See id. at 1029; see also RWKS Comstock, 344 N.L.R.B. at 751 n.2 (relying on Alessio to find that an anti-dual shop clause "is not saved by the construction industry proviso"). Similarly, in Massman, the Board found that a joint venture clause like the one at issue here was not part of the pattern of collective bargaining

-16-

in the construction industry at the time of the proviso's enactment.  See 327 N.L.R.B. at 1258.  Accordingly, the Board held that the disputed joint venture clause violated § 8(e) and was not protected by the construction industry proviso.  Id.

This Court finds persuasive the Board's conclusion in Alessio and Massman that clauses like the one at issue here, which extend obligations under a collective bargaining agreement to joint ventures, were not part of the pattern of collective bargaining in the construction industry when the proviso was enacted.  Unlike the subcontracting clauses discussed in Woelke, the anti-dual shop clause here restricts Gangi's relationships with joint venture partners and entities under common ownership, rather than just subcontractors.  The horizontal business relationships targeted by the joint venture clause here were not intended by Congress to be encompassed within the construction industry proviso.  See Alessio, 310 N.L.R.B. at 1029; see also Cent. Pa., 352 F.3d at 836 (affirming Board decision that subcontracting and joint venture clause was not protected by construction industry proviso).

Plaintiffs also contend that defendants' arguments regarding § 8(e) is better addressed in a proceeding before the Board.  However, section 301 provides for district court jurisdiction over suits for violation of collective bargaining agreements and has been interpreted as permitting district court review of 8(e) violations.  Conn. Ironworkers, 869 F.3d at 104; see also Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 86 (1982) (holding in a case brought under section 301, that a district court must entertain a

-17-

§ 8(e) defense when it is "raised by a party which § 8(e) was designed to protect, and where the defense is not directed to a collateral matter but to the portion of the contract for which enforcement is sought").

Since the construction industry proviso does not operate to exempt the CBA clause at issue here from the prohibition in § 8(e), this Court grants the defendants' motions for judgment on the pleading and dismisses all the claims based on breach of the CBA arising from application of Art. IX, § 1(d) of that agreement.[6]

III. Alter Ego/Single Employer/Successor

Defendants move to dismiss the Fifteenth Claim for Relief on the ground that plaintiffs do not adequately plead that the JV is an alter ego or successor of defendant Gangi and/or that they collectively constitute a single employer. Defendants argue that

---

[6]    Defendants also argue that the proviso exempts work only on "a building, structure, or other work," and does not extend to the work covered by the CBA, which pertains only to the "edge of the building structure." DE 33 at 5 (Reply Mem.). However, the cases cited by defendants concern delivery of materials to a construction site, which the Board and courts have found, in light of the legislative history, is work that does not fall within the so called "on-site" proviso to Section 8(e). Int'l Bhd. of Teamsters, Loc. 251, 356 N.L.R.B. 1061, 1067 (2011); see also NLRB v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 294, 342 F.2d 18, 21-22 (2d Cir. 1965). Rather, the Board and courts have applied the proviso to work on highways, as well as to structures. United Rentals Highway Techs., Inc. v. Indiana Constructors, Inc., 518 F.3d 526, 528 (7th Cir. 2008) (citing Spectacor Mgmt., 320 F.3d at 395) (noting proviso applies to construction of streets, sewers, gutters, and utility installations); Int'l Union of Operating Eng'rs, Loc. Union No. 12, AFL-CIO, 131 N.L.R.B. 520, 526-27 (1961) (noting that when enacting the proviso, Congress did not intend to exclude "such projects as the Federal highway program, pipelines, and tunnels").

the relevant allegations are conclusory and lack sufficient supporting facts.

Under the single employer doctrine, "[a] collective bargaining agreement binding on one employer may be enforced against a non-signatory employer if (1) the two employers constitute a single employer and (2) the employees of the companies constitute a single appropriate bargaining unit." United Union of Roofers, 547 Fed. Appx. at 19; see also Brown v. Sandimo Materials, 250 F.3d 120, 128 n.2 (2d Cir. 2001). "Separate companies are considered a 'single employer' if they are part of a single integrated enterprise." Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996); see Brown, 250 F.3d at 128 n.2. In determining whether two entities constitute a single employer, a court considers four factors, none of which are controlling or need to be present: "(1) interrelations of operations, (2) common management, (3) centralized control of labor functions, and (4) common ownership." Brown, 250 F.3d at 128 n.2; see United Union of Roofers, 574 Fed. App'x at 19. Family connections and the common use of facilities and equipment are also relevant. Brown, 250 F.3d at 128 n.2; see United Union of Roofers, 574 Fed. App'x at 19. "Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an arm's length relationship among unintegrated companies." Lihli, 80 F.3d at 747. Factors to consider in determining whether the defendants' employees constitute a single bargaining unit include "'bargaining history, operational integration, geographic proximity, common supervision, similarity

-19-

of job functions and degree of employee interchange.'" <u>Brown</u>, 250 F.3d at 128 n.2 (quoting <u>Brown v. Dominic Prisco Transport, Inc.</u>, CV-95-1121, 1997 WL 1093463, at *3 (E.D.N.Y. 1997)).

Although the alter ego doctrine may also bind a non-signatory to an agreement, it "is conceptually distinct" from the single employer/single unit doctrine. <u>Truck Drivers Loc. Union No. 807 v. Reg'l Imp. & Exp. Trucking</u>, 944 F.2d 1037, 1046 (2d Cir. 1991). "The purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.'" <u>Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.</u>, 629 F.3d 282, 288 (2d Cir. 2010) (quoting <u>Newspaper Guild of N.Y., Loc. No. 3 of the Newspaper Guild, AFL-CIO v. NLRB</u>, 261 F.3d 291, 298 (2d Cir. 2001)). "The hallmarks of the alter ego doctrine include whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." <u>Id.</u> Although the alter ego doctrine is often applied in situations involving successor entities, it also applies to parallel companies. <u>See</u> <u>id.</u> The determination that an entity is an alter ego "signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the [collective bargaining agreement]." <u>Loc. Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.</u>, 357 F.3d 266, 268 (2d Cir. 2004).

Contrary to defendants' argument, plaintiffs made allegations in the Complaint that are factual, rather than conclusory. Plaintiffs allege that the JV is "an unincorporated partnership between Gangi and Pizzirusso doing business in the State of New York ..." Compl. at ¶ 12.[7] Although this bare allegation does not describe the nature of the relationship between that Gangi and Pizzirusso, it is sufficient to support an inference, in light of other allegations in the complaint regarding identical work performed and use of the same workers, that these two defendants had an agreement to create a joint venture.[8]

Plaintiffs further allege that all the defendants do business in New York and have principal places of business in Brooklyn, New York. Id. at ¶¶ 10-12. Although, as defendants point out, the defendants have different business addresses, this Court takes judicial notice of the fact that the business addresses of the defendants are not far from each other in the southern part of

---

[7] This Court accepts the allegations in the Compl. regarding the JV, but notes that the two defendants have markedly different responses to the allegation -- the JV and Pizzirusso defendants admit that the JV is an unincorporated partnership that performed or was contracted to perform work, while Gangi denies all allegations regarding the JV. Compare DE 15 (Answer of Pizzirusso and JV) at ¶¶ 12, 26, 27 with DE 20 (Answer of Gangi) ¶¶ 12, 26, 27.

[8] Under New York law, "'[n]o particular form of expression is required to create ... (a joint venture) agreement apart from the requirements generally applicable to simple contracts." Yonofsky v. Wernick, 362 F.Supp. 1005, 1025 (S.D.N.Y. 1973) (quoting Wooten v. Marshall, 153 F.Supp. 759, 763 (S.D.N.Y.1957)); see also Canet v. Gooch Ware Travelstead, 917 F. Supp. 969, 988 (E.D.N.Y. 1996). Because the "statute of frauds is generally inapplicable to a joint venture agreement[,] ... an agreement may be inferred from the conduct of the parties in performance of the joint venture." Chalmers v. Eaton Corp., 71 A.D.2d 721, 722 (1979).

Brooklyn. Plaintiffs' allegation that the JV "listed its address as a shop yard," suggesting that administrative operations may be elsewhere. Id. at ¶ 12.

Plaintiffs further allege that Gangi and the JV have "both performed work within the jurisdiction of the [CBA and} use[] the same kind of equipment and the same heavy and highway construction laborers." Id. at ¶ 33. In fact, plaintiffs allege that the JV performed work on a project in Queens and is involved in one in Brooklyn which includes paving and road building work, which clearly is within the coverage of the CBA, as plaintiffs allege. Id. at ¶ 26-28, 60-61. In addition, Plaintiffs allege that Gangi has possession, custody and control and/or a right of access to the books and records of the JV. Id. at ¶ 43. The allegations that Gangi has possession or a right of access to the books of the JV, that the two entities "share substantially the same business purpose" in the same geographical area, and that they use the same employees demonstrates some degree of interrelationship of operations. See Finkel v. Frattarelli Bros., Inc., No. 05 Civ. 1551, 2008 WL 2483291, at *10 (E.D.N.Y. June 17, 2008) ("[b]oth Podesta Trucking and Frattarelli Brothers are in the business of picking up construction materials from New York City job sites"); LaBarbera v. Cretty Enterprises, Inc., Nos. 03 Civ. 6112, 04Civ.5178, 2007 WL 4232765, at *5 (E.D.N.Y. Nov. 28, 2007); cf. Lihli Fashions, 80 F.3d at 749 (reversing NLRB finding of alter egos where companies did not have same business purpose).

Although there are no facts alleged in the complaint regarding centralized control of labor relations, joint control over hiring or firing decisions, the allegation that the JV and Gangi employer used the same employees weighs in favor of a finding of centralized control of labor relations. See Bourgal v. Robco Contracting Enters., Ltd., 969 F. Supp. 854, 864 (E.D.N.Y. 1997) (finding that there was sufficient evidence of centralized labor relations in part because "the corporate defendants employed the same truck drivers" in three related companies owned by husband and wife). Tellingly, since Gangi admits in its answer that it performed work on the Forest Park Project and was contracted to perform work on the Ocean Parkway Project, DE 20 (Gangi Answer) at ¶¶ 26, 27, the allegations support that inference that Gangi was present at the same two projects as the JV and that Gangi may have had some sort of arrangement for common operations and joint management of the business necessary for a joint venture. See USAirways Group, Inc. v. British Airways PLC, 989 F. Supp. 482, 492 (S.D.N.Y. 1997). For the same reasons, the allegations concerning operational integration, geographical proximity, and common employees suffice to establish that the two entities constitute a single bargaining unit. See LaBarbera v. C. Volante Corp., 164 F. Supp. 2d 321, 326 (E.D.N.Y. 2001) (finding an appropriate bargaining unit because "it is undisputed that the companies exchanged employees . . . and the employees performed the same job of driving trucks"); Bourgal, 969 F. Supp. at 863 ("contributions sought are for the same job

classification – truck driver – and for the same type of work – driving a dump truck to transport excavated material").

Therefore, while the allegations here are thin, I follow the reasoning of many other courts in finding that such allegations sufficient to state a claim against Gangi and the JV under an alter ego or single employer theory.  <u>See</u> <u>Ferrara v. Smithtown Trucking Co., Inc.</u>, 29 F. Supp. 3d 274, 283-85 (E.D.N.Y. 2014) (finding that alter ego and single employer allegations would survive motion to dismiss); <u>Trs. of Laborers Union Local No. 1289 of Nassau and Suffolk Counties Ben. Funds v. A to E, Inc.</u>, 64 F. Supp. 3d 435, 440 (S.D.N.Y. 2014) (finding "somewhat sparse" allegations state a plausible claim of alter ego or single employer); <u>Trs. of Empire State Carpenters Annuity v. John J. Paulsey, Inc.</u>, No. 13-CV-1629, 2014 WL 2711914, at *6 (E.D.N.Y. 2014) (finding that plaintiffs alleged enough to survive motion to dismiss where allegations "track relevant factors"); <u>Trs. of Empire State Carpenters Annuity, Apprenticeship v. Syracuse Floor Sys., Inc.</u>, 2013 WL 7390601, at *5-*6 (E.D.N.Y. Dec. 16, 2013) ("allegations in the Complaint, although lean, are sufficient to state a plausible claim" for alter ego or single employer); <u>Trs. of Hollow Metal Trust Fund v. FHA Firedoor Corp.</u>, No. CV 13-1509, 2013 WL 1809673, at *4 (S.D.N.Y. Apr. 30, 2013) (denying motion to dismiss where plaintiffs "summarily pleaded each of" the factors of the alter ego test); <u>Cont'l Floors, Inc.</u>, 2013 WL 5637492 ("weight of authority compels the conclusion taht the allegations in the Complaint, although

lean, are sufficient"); <u>Ferrara v. Oakfield Leasing Inc.</u>, 904 F. Supp. 2d 249, 265 (E.D.N.Y. 2012).

To establish successor liability, plaintiffs must show that the JV had notice of its predecessor's liability under the CBA and a "sufficient continuity of identity" exists between the two companies." <u>Stotter Div. of Graduate Plastics Co. v. Dist. 65</u>, UAW, 991 F.2d 997, 1002-03 (2d Cir. 1993). This determination is "primarily factual in nature and is based upon the totality of the circumstances of a given situation . . . and whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." <u>Fall River Dyeing & Finishing Corp. v. NLRB</u>, 482 U.S. 27, 43 (1987).

Plaintiffs have failed to allege any facts that would support a claim for successor liability. There are no allegations in the complaint that the JV is the result of a merger, acquisition or consolidation. In addition, plaintiffs do not allege that the JV had notice of Gangi's liability under the CBA. Likewise, plaintiffs have not alleged that the JV acquired Gangi's assets or that the JV continued without substantial change Gangi's business. Therefore, defendants' motion is granted on the issue of successor liability.

<u>CONCLUSION</u>

For the foregoing reasons, defendants' motion is granted in part and denied in part.  All of the claims  are dismissed without prejudice, except for the claims of alter ego or single employer liability asserted in the Fifteenth Claim.

**SO ORDERED.**


Dated:    Brooklyn, New York
          May 11, 2018


                         _____/s/_____
                         MARILYN D. GO
                         UNITED STATES MAGISTRATE JUDGE